**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| OLIVIA S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     1:23CV422 |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant.[1] | ) |

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Olivia S., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 10 (Plaintiff's Brief); Docket Entry 11 (Commissioner's Brief); Docket Entry 13 (Plaintiff's Reply)). For the reasons that follow, the

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Court will remand this matter for further administrative proceedings.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 418-30), alleging a disability onset date of May 10, 2018 (see Tr. 418, 422, 426). Upon denial of those applications initially (Tr. 81-94, 121-48) and on reconsideration (Tr. 95-116, 151-68), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 169-70). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 37-62), which the ALJ continued due to Plaintiff's multiple, upcoming medical appointments and procedures (see Tr. 58). The ALJ then held a supplemental hearing attended by Plaintiff, her attorney, and a different VE (Tr. 63-80), and subsequently ruled that Plaintiff did not qualify as disabled under the Act (Tr. 16-35). The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 415-17, 552-54), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] me[t] the insured status requirements of the . . . Act through September 30, 2018.

---

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 12 at 1.)

2

2.  [Plaintiff] engaged in substantial gainful activity during the following periods: the third and fourth quarters of 2020.

. . .

3.  However, there has been a continuous 12-month period(s) during which [Plaintiff] did not engage in substantial gainful activity.  The remaining findings address the period(s) [Plaintiff] did not engage in substantial gainful activity.

4.  [Plaintiff] has the following severe impairment: degenerative disc disease.

. . .

5.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

6.  . . . [Plaintiff] has the residual functional capacity to perform light work . . . except as limited by the following.  [Plaintiff] can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds.  She can frequently balance, occasionally stoop, and frequently kneel, crouch, and crawl.

. . .

7.  [Plaintiff] is capable of performing past relevant work as a hotel housekeeper.  This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity.

. . .

8.  [Plaintiff] has not been under a disability, as defined in the . . . Act, from May 10, 2018, through the date of this decision.

(Tr. 22-28 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Even given those limitations, the Court should remand this case for further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the

4

case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u>

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." <u>Id.</u> at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. <u>Id.</u> at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<em>e.g.</em>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

7

both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignment of Error

In Plaintiff's first and only issue on review, she maintains that "[t]he ALJ erred at [s]tep 4 [of the SEP] by finding past relevant work [('PRW')] that does not meet the requirements of [SSA] regulations." (Docket Entry 10 at 5 (bold font, underscoring and block formatting omitted); see also Docket Entry 13 at 1-3.) More specifically, Plaintiff contends that the ALJ relied on "Plaintiff's statements on her Disability Report" to find that she "ha[d PRW] as a hotel housekeeper[, ] that she performed such work from May 2010 to May 2018, and [that she] earned about $15,000 per year" (Docket Entry 10 at 7 (internal quotation marks and parenthetical citations omitted) (citing Tr. 27 (in turn citing Tr. 475))), but contends that her "earnings record" shows that the information about Plaintiff's housekeeping job in the Disability

_____

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Report "is simply inaccurate and cannot be relied upon to support th[e ALJ's step four] determination" (id.). According to Plaintiff, her "earnings record" shows that her "average monthly earnings were consistently well below the statutory [substantial gainful activity ('SGA')] amounts from May 2010 through May 2018" (id. (citing Tr. 438, and Program Operations Manual System ("POMS") § DI 10501.015)), and "the ALJ had knowledge of th[at fact] because[,] during the [] hearing[, the ALJ] noted that the timing and duration of [Plaintiff's prior] work . . . would [affect] whether it . . . met SGA [requirements]" (id. at 8 (citing Tr. 43-44)). Plaintiff notes that, despite the ALJ's knowledge of missing information regarding the duration of Plaintiff's prior work, the ALJ "failed to actually resolve those issues sufficiently in order to appropriately write the determination in a way that was supported by substantial evidence." (Id. at 10.) In Plaintiff's view, "[t]he ALJ's error . . . was not harmless," because "Plaintiff is a person of advanced age[,] . . . with a limited education, and no [PRW], [who therefore] would be deemed disabled under Medical-Vocational Guideline Rule 202.01." (Id. (referencing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 202.01).) For the reasons explained in more detail below, Plaintiff's contentions have merit and warrant remand.

The Commissioner's regulations define PRW as "work that [a claimant has] done within the past 15 years, that was [SGA], and

that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Generally, the Commissioner considers a claimant's earnings in the 15 years prior to the disability adjudication at issue or 15 years prior to the date the claimant last met the disability insured status requirements, if earlier, Social Security Ruling 82-62, Titles II and XVI: a Disability Claimant's Capacity to Do Past Relevant Work, in General, 1982 WL 31386, at *2 (1982) ("SSR 82-62"), which in the instant case would capture Plaintiff's earnings from September 30, 2003, to September 30, 2018, her date last insured. In evaluating whether work activity qualifies as SGA, the amount of earnings represents the "primary consideration." 20 C.F.R. §§ 404.1574 (a)(1), 416.974(a)(1). Thus, to assist in determining whether a claimant's past work constitutes SGA, the regulations establish earnings thresholds below which work generally does not qualify as SGA. See 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2); see also POMS § DI 10501.015B (providing table of monthly SGA earnings thresholds for calendar years 1978 through 2024).

The ALJ provided the following explanation supporting his step four finding that Plaintiff could perform her PRW as a hotel housekeeper:

> [Plaintiff] worked as a hotel housekeeper ([Dictionary of Occupational Titles ('DOT')] 323.687-014, generally performed at light but actually performed at medium, [Specific Vocational Preparation ('SVP')] 2) from May 2010 to May 2018, and she earned about $15,000 per year ([Tr. 475]). During this period, the threshold for [SGA] rose incrementally from $1,000 per month and $12,000 per

10

year to $1,180 per month and $14,160 per year. Jobs with a[n SVP] level of two can take up to and including one month to learn, and [Plaintiff] worked as a hotel housekeeper for longer than one month. In sum, because [Plaintiff]'s earnings reach [SGA] levels, she worked long enough to learn the job, and the work was performed within the last 15 years, the job of hotel housekeeper is [PRW] for [Plaintiff].

(Tr. 27.) As the following discussion makes clear, the ALJ erred by relying solely on Plaintiff's Disability Report to find that her earnings from her prior work as a hotel housekeeper qualified as SGA (and therefore as PRW).

Prior to the hearing, Plaintiff submitted a Disability Report on which she indicated that she worked as a "[h]ousekeeper" at a "2-star hotel" from May 2010 to May 2018, earning $15,000 per year. (Tr. 475.) However, her earnings records developed by SSA personnel showed that she earned far less than $15,000 per year in each of the years from 2010 to 2018. (See Tr. 438 (reflecting reported earnings of $3,313.28 in 2010, $5,762.21 in 2011, $3,301.06 in 2012, $3,377.00 in 2013, $5,350.00 in 2014, $5,174.81 in 2015, $1,880.00 in 2016, $378.00 in 2017, and $0 in 2018); see also Tr. 439-42 (breaking down those earnings by employer).) Nevertheless, Plaintiff's earnings in any of those years could still qualify as SGA depending on the duration of her employment, i.e., if she only worked as a hotel housekeeper for three months in 2015, then her total earnings that year of $5,174.81 would translate to $1,724.94 per month, which exceeds the SGA threshold of $1,090.00 for calendar year 2015. Thus, whether Plaintiff's

11

past work as a hotel housekeeper actually qualified as SGA turned on the <u>length of time</u> she held her various hotel housekeeping jobs.

During Plaintiff's first hearing, the ALJ indicated that he "want[ed] to explore [Plaintiff's prior hotel housekeeping job at] High Point Plaza [Hotel and Conference Center] because[,] looking at the record[,] it look[ed] like in 2013, there was [$]3,300 [in reported earnings], and then in 2014 there was [$]5,300 [in reported earnings] so[,] <u>depending on the length of time [that Plaintiff worked at High Point Plaza</u>,] that might rise to SGA for some period . . . in late 2013, 2014." (Tr. 43 (emphasis added).) Plaintiff's attorney then proceeded to ask Plaintiff a series of questions about her job duties at High Point Plaza, but did <u>not</u> ask her how long she worked for that employer. (<u>See</u> Tr. 44-45.) As a result, the ALJ interjected that he wanted to know "the <u>timeframe</u> for each of [Plaintiff's prior hotel housekeeping jobs] to determine whether or not it rose to SGA level." (Tr. 45 (emphasis added).) Plaintiff subsequently testified that she worked at Trinity Motels part-time for "about 14 months" from 2010 to 2011, but that Trinity Motels "didn't deduct taxes from [her paycheck, but] just [gave her] a straight out check" (Tr. 46), worked at the Days Inn for "five years or more" full-time, and worked at the "Motel 6[] until they went out of business" (Tr. 47). Thereafter, neither the ALJ nor Plaintiff's attorney asked Plaintiff how long she worked at High Point Plaza or the Motel 6 (<u>see</u> Tr. 44-47), and

12

the ALJ did not develop any additional details about Plaintiff's past work as a hotel housekeeper during the supplemental hearing (see Tr. 63-80).

Contrary to Plaintiff's Disability Report, her testimony and the SSA's earnings report did not establish that any of her former hotel housekeeping jobs rose to the level of SGA. As the ALJ did not develop how long Plaintiff worked at High Point Plaza in 2013 and 2014, the Court cannot determine whether her reported earnings from that employer of $3,377.00 in 2013 and $5,350.00 in 2014 (see Tr. 441) rose to the level of SGA. See Irma M. v. Saul, No. 5:18CV1146, 2019 WL 3531985, at *3 (C.D. Cal. Aug. 2, 2019) (unpublished) ("[T]he record is unclear as to how many months [the p]laintiff worked in 2013. If [she] worked eight months out of the year or more (averaging $1038 per month or less), she could not have met the SGA amount for 2013. The Commissioner's contention that [the plaintiff] worked only three months in 2013 is not supported by substantial evidence. At most, the record regarding 2013 contains insufficient or ambiguous information that the ALJ should have resolved – but did not."). Regarding Trinity Motels, Plaintiff testified that she worked for that employer for "about 14 months" part-time in 2010 and 2011 (Tr. 46) and, with reported earnings from Trinity Motels of $3,313.28 in 2010 (see Tr. 440) and $2,836.58 in 2011 (see Tr. 441), her monthly average earnings of $439.28 fell significantly below the SGA threshold of $1,000 per

13

month for calendar years 2010 and 2011, <u>see</u> POMS § DI 10501.015B.[7] Although Plaintiff claimed to have worked for the Days Inn for "five years or more" (Tr. 47), that employer only reported earnings of $2,925.63 in 2011 (<u>see</u> Tr. 440) and $3,276.31 in 2012 (<u>see</u> Tr. 441). Even if Plaintiff worked only two years for the Days Inn rather than "five years or more" as she testified (Tr. 47), her average monthly earnings of $258.41 do not approach the SGA thresholds of $1,000 and $1,010 for calendar years 2011 and 2012, respectively, <u>see</u> POMS § DI 10501.015B. Although Plaintiff stated that she worked for the "Motel 6[] until they went out of business" (Tr. 47), the ALJ did not inquire <u>how long</u> that employment lasted (<u>see</u> <u>id.</u>), and Motel 6 reported earnings of only $24.75 in 2012 (<u>see</u> Tr. 441).

In the face of Plaintiff's testimony and the SSA's earnings report, which fail to establish that <u>any</u> of her prior work as a hotel housekeeper rose to the level of SGA, the ALJ erred by relying <u>solely</u> on Plaintiff's non-specific and contradictory statements on a Disability Report to deny Plaintiff's claims at step four of the SEP. <u>See</u> <u>Klemens v. Berryhill</u>, 703 F. App'x 35, 38 (2d Cir. 2017) ("[T]he ALJ merely asserted — without any discussion — that [the plaintiff] performed the job as a cleaner

_____

[7] Plaintiff testified that Trinity Motels "didn't deduct taxes from [her] paycheck]" and provided "just a straight out check" (Tr. 46), and, thus, the possibility exists that Plaintiff's <u>reported</u> earnings from Trinity Motels did not capture all of the income she earned at that job. The ALJ, however, did not explore that possibility, either at the hearing (<u>see</u> Tr. 46) or in his decision (<u>see</u> Tr. 27-28).

with sufficient earnings to raise the presumption of [SGA]. The ALJ did not, for example, find (or even allude) that [the plaintiff's] certified earnings record omitted certain income, nor did the ALJ expressly recognize the existence of (much less reconcile) the various pieces of contradictory evidence. Moreover, the ALJ did not provide a record citation to any of the pertinent [conflicting] evidence . . ., which would have at least provided some indication that he had considered the contrary evidence. In short, based on our review of the certified administrative record, the ALJ simply failed to acknowledge relevant evidence or explain his implicit rejection of the conflicting evidence." (internal quotation marks and citation omitted)); Montoya v. Colvin, 649 F. App'x 429, 430-31 (9th Cir. 2016) (holding that ALJ erred in finding the plaintiff's prior jobs qualified as PRW "without addressing the [SGA] issue or developing the record on it," and finding record "unclear" whether the plaintiff's earnings met SGA thresholds); Michael L. v. Kijakazi, No. 2:20CV6440, 2021 WL 5868326, at *4 (C.D. Cal. Dec. 9, 2021) (unpublished) ("[The p]laintiff's [e]arnings [s]tatements indicate that . . . his earnings fell far below the level required to constitute [SGA]. The SSA's [e]arnings [r]eport is probative evidence bearing directly on the amount of a claimant's wages. The ALJ was not permitted to disregard such evidence without explanation. The ALJ's failure to discuss why she discounted earnings evidence

15

reported from outside government agencies in favor of [the p]laintiff's self-reports prevents th[e c]ourt from effectively reviewing whether the ALJ's decision to do so was supported by substantial evidence and free of legal error." (internal footnote, citations, some quotation marks, and brackets omitted)); Parrott v. Berryhill, No. 6:17CV558, 2019 WL 2578713, at *4 (E.D. Tex. June 24, 2019) (unpublished) (where the plaintiff's statements on Disability Report conflicted with SSA's earnings report, court remanded because "record contain[ed] conflicting evidence concerning whether [the p]laintiff's job as a housekeeper was SGA" and, "[d]espite th[at] conflict, the ALJ simply stated that [the p]laintiff worked as a housekeeper at SGA levels" and "made no attempt to clear the ambiguity in the record or provide evidentiary support for his decision"); Gonzales v. Colvin, No. CV 14-835, 2016 WL 10592219, at *6 (D.N.M. Feb. 24, 2016) (unpublished) ("[G]iven [the plaintiff's] short work periods and limited earnings as a document specialist, the ALJ had a responsibility to evaluate whether [the plaintiff's] past work as a document specialist was [SGA] . . . . The ALJ did not do so. Instead, he appeared to have relied solely on [the plaintiff's] Work History Form and testimony that she worked full time as a document specialist. Had the ALJ thoroughly reviewed the record, he would have uncovered that [the plaintiff's] reported work history and testimony failed to align with her actual earnings and, as such, his evaluation required

16

more, including developing the record." (internal parenthetical citation omitted)); <u>Shafer v. Colvin</u>, Civ. No. 13-C-0929, 2014 WL 1785343, at *13 (E.D. Wis. May 5, 2014) (unpublished) ("While the Commissioner's brief marshals evidence that could support a finding that [the] plaintiff's earnings from the telemarketer job reached the SGA level, it is the job of the ALJ, not the court, to weigh the evidence, resolve conflicts, and make independent findings of fact. . . . The ALJ must confront all of the evidence and resolve the conflicts, rather than relying on one report that supports his conclusion.").

Moreover, that error by the ALJ does not qualify as harmless, because the ALJ neither found Plaintiff capable of performing any other PRW (<u>see</u> Tr. 27-28), nor made an alternate, step five finding that Plaintiff could perform other jobs that existed in significant numbers in the national economy (<u>see</u> Tr. 28). <u>See generally</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").[8]

---

[8] Plaintiff argues that she "is a person of advanced age[,] . . . with a limited education, and no [PRW], [and therefore] would be deemed disabled under Medical-Vocational Guideline Rule 202.01" (Docket Entry 8 at 10 (referencing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 202.01)). As the ALJ decided the case at step four of the SEP, he did not make any findings regarding Plaintiff's educational level (<u>see</u> Tr. Tr. 27-28), and the record contains conflicting evidence on that subject (<u>compare</u> Tr. 56 (Plaintiff's testimony that she earned a high school diploma), <u>with</u> Tr. 475 (Disability Report reflecting that Plaintiff completed eleventh grade)). However, for an individual of advanced age, Medical-Vocational Rule 202.04 directs a conclusion of "disabled" even for individuals with a <u>high school education</u> and unskilled PRW. Because a step four finding that

The Commissioner raises three arguments as to why the ALJ did not err in making his step four finding (see Docket Entry 11 at 5-7), none of which carry the day.

First, the Commissioner contends that "the ALJ was entitled to rely on Plaintiff's statements regarding her work activity because the regulations instruct that the claimant is the primary source of vocational documentation." (Id. at 5-6 (citing 20 C.F.R. §§ 404.1565(b), 416.965(b), and SSR 82-62, 1982 WL 31386, at *3).) According to the Commissioner, "[t]his Court has found that Plaintiff's own statements regarding earnings were sufficient to rely upon in finding work above presumptive levels of [SGA]." (Id. at 6 (citing Graham v. Saul, No. 1:18CV403, 2019 WL 3767041, at *6 (M.D.N.C. Aug. 9, 2019) (unpublished), recommendation adopted, 2019 WL 5783543 (M.D.N.C. Sept. 3, 2019) (unpublished)).)

That argument glosses over the fact that Plaintiff's testimony, which contradicted both her statements on the Disability Report and the SSA's earnings report (compare Tr. 45-47, with Tr. 440-41, 475), would also qualify as "the primary source of vocational documentation" (Docket Entry 11 at 6). Furthermore, Graham does not aid the Commissioner's cause because, in that case, the plaintiff testified that she worked as a sorter full-time at

_____

Plaintiff could not perform any PRW (or that she lacked any PRW) would likely result in a favorable outcome for Plaintiff, on remand, the ALJ must support any step four determination that Plaintiff can return to her PRW with substantial evidence and resolve any conflicts in the evidence relating to her prior work.

minimum wage for about six to eight months, Graham, 2019 WL
3767041, at *5, the SSA's earnings report indicated that she earned
$5,988.86 in total as a sorter in 1998 and 1999, see id. at *6, and
Plaintiff stated on a Disability Report that she worked as a sorter
full-time in 1998 and 1999 at $6.00 per hour, see id. In other
words, all of the vocational information in Graham harmonized and
established that the plaintiff's past work as a sorter qualified as
SGA (and therefore as PRW). Here, in contrast, Plaintiff's
testimony and Disability Report conflict with each other and with
the SSA's earnings report (compare Tr. 45-47, with Tr. 440-41,
475), and, thus, absent a resolution of those conflicts, the ALJ
could not simply rely on Plaintiff's non-specific statement about
her hotel housekeeping past work on the Disability Report.

    Second, the Commissioner concedes "that Plaintiff's earnings
records indicate less income than the [] Disability Report," but
argues that "it is the ALJ's responsibility to resolve conflicts of
evidence that would allow reasonable minds to differ." (Docket
Entry 11 at 6-7 (citing Johnson v. Barnhart, 434 F.3d 650, 653 (4th
Cir. 2005) (per curiam)).) That contention fails for the simple
reason that the ALJ here did not "resolve conflicts [in the]
evidence" (id.), but, rather, simply cited Plaintiff's statements
on the Disability Report as the sole basis for the ALJ's finding
that Plaintiff's prior work as a hotel housekeeper qualified as PRW
(see Tr. 27). The ALJ addressed neither Plaintiff's conflicting

Case 1:23-cv-00422-LPA   Document 14   Filed 06/18/24   Page 19 of 23

testimony (<u>see</u> Tr. 45-47) nor the SSA's earnings report reflecting substantially less income than the Disability Report's $15,000 per year from 2010 to 2018 (<u>see</u> Tr. 475). (<u>See</u> <u>id.</u>) "The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." <u>Smith v. Chater</u>, 99 F.3d 635, 638 (4th Cir. 1996).

Third, the Commissioner maintains that "Plaintiff's attorney raised no objections at either of the two hearings regarding the hotel housekeeping job being classified as [PRW] due to deficiencies with [SGA], which undermines her claim of error[.]" (Docket Entry 11 at 7 (citing Tr. 59, 75).) In Plaintiff's Reply, she contends that "there is no requirement that a [p]laintiff must exhaust all issues" before the SSA (Docket Entry 13 at 3 (citing <u>Sims v. Apfel</u>, 530 U.S. 103, 105 (2000))), and notes that her "counsel did raise the issue at the [ h]earing and asserted that [] Plaintiff likely did not have any past work that rose to the level of SGA" (<u>id.</u> (citing Tr. 43)).

Plaintiff's reliance on <u>Sims</u> misses the mark. That case held that claimants need not "exhaust issues in a <u>request for review by the Appeals Council</u> in order to preserve judicial review of those issues," <u>Sims</u>, 530 U.S. at 111 (emphasis added), but expressly <u>declined</u> to address the question of "[w]hether a claimant must exhaust issues before the <u>ALJ</u>," <u>id.</u> at 107 (emphasis added). Furthermore, following <u>Sims</u>, numerous federal courts, including

20

this Court, have continued to find that claimants forfeited the right to bring issues on judicial review that they failed to raise before the ALJ. See, e.g., Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (holding the claimant's failure to raise issue before ALJ "waived [the claim] from being raised on appeal"); Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) (indicating court "ha[d] no intention of extending th[e] rule [in Sims] . . . to the failure of an applicant to raise an issue at the ALJ level" and deeming issue not raised before ALJ waived); Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (unpublished) (finding waiver of issue where the plaintiff failed to raise it at ALJ's hearing), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014) (Schroeder, J.); Stepinski v. Astrue, No. CA 11-183, 2012 WL 3866678, at * 9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("The [c]ourt views unfavorably the silence of [the p]laintiff's counsel at the hearing regarding the omission about which he now complains. Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive. Accordingly, the [c]ourt finds that [the p]laintiff waived this issue by failing to raise it before the

21

ALJ." (internal citations omitted)); see also Sayre v. Chater, 113 F.3d 1232 (table), 1997 WL 232305, at *2 (4th Cir. May 8, 1997) (unpublished) (finding, prior to Sims, issue on appeal waived where "nothing in the record [ ] suggest[ed] that [the plaintiff] provided [] the ALJ . . . with the opportunity to consider" issue).

Although Sims does not prevent the Court from finding that Plaintiff forfeited her right to raise her SGA-related arguments in this Court by not raising them before the ALJ, the Court finds forfeiture unwarranted, as the record demonstrates that Plaintiff did raise the issue sufficiently while her claim remained pending before the ALJ. In two pre-hearing briefs, one before each of her hearings, Plaintiff argued that her prior work as a hotel housekeeper did not rise to the level of SGA and therefore did not qualify as PRW. (See Tr. 243-44 ("The state agency erred in denying [Plaintiff] based on a job that does not rise to the level of [SGA]. . . . The highest earning year for [Plaintiff] was 2014, where she made [$]5[,]350 which doesn't even reach half the [SGA] amount for that year when divided over 12 months."), 372-74 ("We maintain that [Plaintiff] has no [PRW], with all of her earnings prior to her onset date well below the threshold for [SGA].").)[9] Plaintiff's counsel also suggested during the hearing that

_____

[9] Plaintiff also made this argument in her request for review with the Appeals Council. (See Tr. 552-54 ("The [ALJ's] decision found [Plaintiff] capable of performing past work as a hotel housekeeper. However, [Plaintiff]'s work as a hotel housekeeper was not performed at or above SGA levels." (citation omitted)).)

22

Plaintiff's post-onset work as a hospital cleaner with Aramark in 2020 constituted "the only job" meriting further development, because counsel believed Plaintiff's earnings from High Point Plaza in 2014 did not qualify as SGA and "didn't see any" other jobs rising to the level of SGA. (Tr. 43.)

In light of the foregoing analysis, Plaintiff's sole issue on review demonstrates step-four prejudicial error by the ALJ, entitling Plaintiff to remand.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **VACATED,** and that this action is **REMANDED** under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to include re-evaluation of whether Plaintiff's prior work as a hotel housekeeper rose to the level of SGA and resolution of all conflicts in the evidence relating to that issue.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 18, 2024